ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PLAZA CAROLINA MALL, L.P.<br>Apelado/Recurrido<br><br>v.<br><br>ARGENTINA GRILL, INC. H/N/C LA PARRILLA ARGENTINA; JORGE RODRÍGUEZ MELANI, SU ESPOSA, IRMA LOCKWOOD BENET Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br>Apelante/Peticionario | TA2025AP00059 consolidado con TA2025CE00054 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Número: CA2022CV03458<br><br>Sobre: Cobro de dinero |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

Rivera Marchand, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de agosto de 2025.

Comparecen ante esta Curia, Argentina Grill, Inc. h/n/c La Parrilla Argentina, el señor Jorge Rodríguez Melani, la señora Irma Lockwood Benet y la sociedad de gananciales compuesta por ambos (La Parrilla Argentina o Apelantes), mediante los recursos consolidados de epígrafe.[1] Solicitan que revoquemos la *Sentencia Parcial* que el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario), notificó el 13 de marzo de 2025, la cual fue objeto de reconsideración; y la *Resolución Enmendada,* notificada el 28 de mayo de 2025.[2]

Por los fundamentos que exponemos a continuación, y con relación al Recurso Núm. TA2025AP00059, revocamos en parte y confirmamos en parte la *Sentencia Parcial* apelada. En cuanto a la

---

[1] Mediante una *Resolución,* notificada el 10 de julio de 2025, ordenamos la consolidación de ambos recursos de epígrafe.
[2] Surge del referido dictamen, que la enmienda se realizó a los fines de aclarar las partes en las determinaciones de hechos.

*Resolución Enmendada* objeto del Recurso Núm. TA2025CE00054, expedimos el auto de *certiorari* y modificamos el dictamen recurrido.

**I.**

El presente litigio dio inicio, el 27 de octubre de 2022, con la presentación de una demanda sobre cobro de dinero que instó Plaza Carolina Mall, L.P. (Plaza Carolina o Apelada) en contra de La Parrilla Argentina. Según las alegaciones de la demanda, el 11 de mayo de 2015, La Parrilla Argentina y Plaza Carolina otorgaron un contrato de arrendamiento sobre el Espacio Comercial VC14, intitulado *Lease by and between Plaza Carolina Mall, L.P. a Delaware limited partnership and Argentina Grill, Inc., a Puerto Rico corporation* (Contrato), vigente durante diez (10) años.[3] Alegó, además, que el señor Jorge Rodríguez Melani y la señora Irma Lockwood Benet comparecieron como garantizadores personales de los derechos establecidos en el contrato de arrendamiento, frente a Plaza Carolina. Expuso que, La Parrilla Argentina incumplió su obligación de pagar los cánones de arrendamiento, producto de lo cual, presuntamente adeuda a Plaza Carolina $604,377.21, por concepto de los cánones futuros dejados de percibir, más las costas, gastos, intereses y honorarios de abogado.

En respuesta, La Parrilla Argentina acreditó su alegación responsiva en la cual negó la mayoría de las alegaciones en su contra y, a su vez, instó una reconvención sobre daños por incumplimiento de contrato, enriquecimiento injusto y sentencia declaratoria.[4] De la reconvención surge que, La Parrilla Argentina cesó operaciones en diciembre de 2021, lo cual atribuyó a su grave situación económica, empeorada luego del paso del Huracán María y de la pandemia por el Covid-19. Invocó la nulidad del contrato de

---

[3] Surge de las determinaciones de hechos que formuló el foro primario que, el acuerdo fue objeto de una enmienda el 29 de mayo de 2019.

[4] La Parrilla Argentina enmendó la reconvención a los fines de añadir la causa de acción sobre sentencia declaratoria, decretando la nulidad del contrato de arrendamiento suscrito entre las partes.

arrendamiento sustentado en el presunto dolo incurrido por Plaza Carolina al alegar que sus ventas serían similares a las de Plaza Las Américas. A esos efectos, reclamó el pago de $1,000,000.00 por las pérdidas sufridas debido al presunto incumplimiento de Plaza Carolina de mantener "Anchor Tenants" y un tráfico sustancial de clientes y consumidores. Además, expuso haber dejado equipo y mejoras valorizadas en más de $300,000.00 en beneficio de Plaza Carolina, por lo cual, de no ser reembolsado por dicha cuantía constituiría un enriquecimiento injusto.

Tras solicitar sin éxito la desestimación de la reconvención,[5] y luego de contestar la reconvención enmendada, el 8 de julio de 2024, Plaza Carolina promovió un petitorio sumario.[6] Allí, suplicó al TPI que declare ha lugar y por la vía sumaria la demanda interpuesta en contra de La Parrilla Argentina y que condene solidariamente a los apelantes al pago de $457,232.48, más las costas, gastos, intereses y honorarios de abogado. En su escrito, propuso los siguientes hechos que, a su entender, son incontrovertidos:

1. Plaza Carolina Mall, L.P., es una sociedad especial organizada bajo las leyes del Estado de Delaware y autorizada para hacer negocios en Puerto Rico, con oficinas en el Municipio de Carolina. Se dedica al manejo y arrendamiento de espacios comerciales en el Centro Comercial Plaza Carolina, del cual es dueña. *Véase* el párrafo número 1 de la Demanda.
2. La parte Demandada Reconveniente, Argentina Grill, Inc. h/n/c La Parrilla Argentina (en adelante, "demandada"), por información y creencia al momento de la radicación de la Demanda, es una corporación doméstica, incorporada al amparo de las leyes del Estado Libre Asociado de Puerto Rico, número de registro 199209, debidamente autorizada para hacer negocios en Puerto Rico. La dirección física de la parte demandada según los récords del Registro de Corporaciones del Departamento de Estado al momento de la radicación de la demanda era: 141 Calle O'Neill, San Juan, PR 00918. Según la contestación a la demanda, la dirección física de Argentina Grill es 217 Ave. Laurel, Bayamón, Puerto Rico 00959. *Véase* párrafo número 2 de la Demanda y de la Contestación a la Demanda.
3. La parte codemandada reconveniente Jorge Rodríguez Melani es mayor de edad, presidente de Argentina Grill, Inc., y está casado con Irma Lockwood Benet. Véase párrafo número 3 de la Demanda y de la Contestación a la Demanda. La parte codemandada reconveniente Irma Lockwood Benet es mayor

---

[5] Mediante una *Resolución,* notificada el 27 de marzo de 2023, el foro primario se negó a desestimar la reconvención enmendada que instó La Parrilla Argentina, al inicio del litigio. Entrada 26 en SUMAC.

[6] Incluyó como anejo del referido petitorio sumario un documento intitulado: *Net Present Value: Cantidad Adeudada.* Entrada Núm. 52 en SUMAC.

de edad, secretaria y tesorera de Argentina Grill, Inc., y está casada con Jorge Rodríguez Melani. *Véase* párrafo número 4 de la Demanda y de la Contestación a la Demanda. La parte codemandada reconveniente Sociedad Legal de Bienes Gananciales es la sociedad legal de bienes gananciales compuesta por los codemandados Jorge Rodr[í]guez Melani e Irma Lockwood Benet. *Véase* el párrafo número 5 de la Demanda y Contestación a la Demanda.

4. La parte demandante, en su función de arrendador, le arrendó a la parte demandada y arrendataria un *espacio comercial de 588 pies cuadrados* aproximadamente, localizado en el Centro Comercial Plaza Carolina e identificado para efectos del *Contrato de Arrendamiento* entre las partes como el *Espacio Comercial Número VC14. Véase* el párrafo número 6 de la demanda y Contestación a la Demanda. *Véase* también Anejo 1 de la Demanda, Sección 1.1 (b) y (c), a la pág. 1.

5. El Contrato entre las partes referente a dicho espacio fue suscrito el día 11 de mayo de 2015, por un periodo de diez (10) años. *Véase* el párrafo número 7 de la Demanda y Contestación a la Demanda. *Véase* también Anejo 1 de la Demanda, Sección 1.1 (d), a la pág. 1.

6. El Contrato entre las partes fue enmendado el 29 de mayo de 2019. *Véase* el párrafo número 7 de la Demanda y Contestación a la Demanda. *Véase* también Anejo 2 de la Demanda.

7. Como parte del Contrato de Arrendamiento, y consideración de este, la parte demandada firmó una garantía personal en la cual comparecieron los codemandados Jorge Rodr[í]guez Melani e Irma Lockwood Benet. *Véase* el párrafo número 8 de la Demanda y Contestación a la Demanda. La garantía firmada por los codemandados, Jorge Rodr[í]guez Melani e Irma Lockwood Benet dispone expresamente lo siguiente:

FOR VALUE RECEIVED, and in consideration concurrently of the execution of a certain Lease of even date herewith and herewith covering certain premises in the Plaza Carolina Mall, the creation of the tenancy under said Lease and the extension of credit by PLAZA CAROLINA MALL, L.P., a Delaware limited partnership (Landlord) to ARGENTINA GRILL, INC., a *Puerto Rico* corporation (Tenant), and for the purpose of inducing Land lord to enter into such Lease, JORGE *RODRIGUEZ* MELANI AND JRMA LOCKWOOD, husband and wife, jointly and severally (Guarantor), does hereby absolutely and unconditionally guarantee to Landlord, its successors and assigns, the full and prompt payment when due, of all rents, charges and additional sums coming due under said Lease, together with the performance of all covenants and agreements of the Tenant therein contained and together with the full and prompt payment of all damages that may arise or be incurred by Landlord in consequence of Tenant's failure to perform such covenants and agreements (all such obligations hereinafter collectively referred to as 'Liabilities"), and Guarantor further agrees to pay all expenses, including attorneys' fees and legal expenses, paid or incurred by Landlord in endeavoring to collect or enforce the Liabilities or any part thereof and in enforcing this guaranty, such payment and performance to be made or performed by Guarantor forthwith upon a default by Tenant.

In the event of the death, incompetency, dissolution, bankruptcy or insolvency of Tenant, or the inability of Tenant to pay debts as they mature, or an assignment by Tenant for the benefit of creditors, or the institution of any

bankruptcy or other proceedings by or against Tenant alleging that Tenant is insolvent or unable to pay debts as they mature, or Tenant's default under this Lease, and if such event shall occur at a time when any of the Liabilities may not then be due and payable, Guarantor agrees to pay to Landlord upon demand, the full amount which would be payable hereunder by Guarantor if all Liabilities were then due and payable.

This Guaranty shall be an absolute and unconditional guaranty and shall remain in full force and effect as to Guarantor during the demised term of said Lease, and any renewal or extension thereof, and thereafter so long as any Liabilities remain due and payable even though the demised term or any renewal or extension thereof shall have expired. An Assignment of said Lease or any subletting thereunder shall not release or relieve Guarantor from their liability hereunder. *Notwithstanding anything herein to the contrary, the undersigned's Liabilities shall be limited to an amount equal to twelve (12) full calendar months of Minimum Rent, Percentage Rent, and additional rent based upon the Minimum Rent, Percentage Rent and additional rent in effect at the time Tenant defaults under the terms of this Lease."*

Landlord may, from time to time, without notice to Guarantor: (a) retain or obtain a security interest in any property to secure any of the Liabilities or any obligation hereunder, (b) retain or obtain the primary or secondary liability or any party or parties, in addition to Guarantor, with respect to any of the Liabilities, (c) extend or renew for any period (whether or not longer than the original period), alter or exchange said Lease or any of the Liabilities, (d) release, waive or compromise any liability of Guarantor hereunder or any liability of any other party or parties primarily or secondarily liable on any of the Liabilities, (e) release or impair any security interest of lien, if any, in all of any property, and (f) resort to Guarantor for payment of any obligation hereunder or shall have proceeded against Guarantor or against Tenant or any other party primarily or secondarily liable on any of the Liabilities. No such action or failure to act by Landlord shall affect Guarantors' liability hereunder in any manner whatsoever. Any amount received by Landlord from whatsoever source and applied by it toward the payment of the Liabilities shall be applied in such order of application as Landlord may from time to time elect.

Guarantor hereby expressly waives: (a) notice of the acceptance of this Guaranty, (b) notice of the existence, creation, amount, modification, amendment, alteration or extension of the Lease or all or any of the Liabilities, whether or not such notice is required to be given to Tenant under the terms of the Lease, (c) presentment, demand, notice of dishonor, protest, and all other notices whatsoever, (d) any benefit of valuation, appraisement, homestead or other diligence in collection, perfection or protection of or realization upon the Liabilities or any thereof, any obligation hereunder, or any security for any of the foregoing.

No delay on the part of Landlord in the exercise of any right or remedy shall operate as a waiver thereof, and no final or partial exercise by Landlord of any right or remedy shall preclude other or further exercises thereof or the exercises of any other right or remedy.

The validity of this Guaranty and the obligations of Guarantor hereunder shall not be terminated, affected or impaired by reason of any action which Landlord may take or fail to take against Tenant of by reason of any waiver of, or failure to enforce, any of the rights or remedies reserved to Landlord in said Lease, or otherwise, of by reason of the bankruptcy of insolvency of Tenant and whether or not the term of said Lease shall terminate by reason of said bankruptcy or insolvency.

This Guaranty shall be binding upon Guarantor, and upon the heirs, legal representatives, successors and assigns of Guarantor and shall be governed by the laws of the State of Indiana. […]

12. En el Contrato de Arrendamiento, la Demandada Reconveniente se comprometió a pagar un canon de arrendamiento anual de $93,280.32 por el primer año del Contrato, $96,079.20 por el segundo año del Contrato, $98,960.40 por el tercer año del Contrato, $101,929.80 por el cuarto año del Contrato, $104,987.40 por el quinto año del Contrato, $108,139.08 por el sexto año del Contrato, $111,384.84 por el séptimo año del Contrato, $114,724.68 por el octavo año del Contrato, $118,164.48 por el noveno año del Contrato, y $121,710.12 por el décimo y último año del Contrato, cantidad que debe ser pagada en cuotas mensuales de igual cantidad. *Véase* el párrafo número 10 de la Demanda y Contestación a la Demanda. *Véase* también Anejo 1 de la Demanda, Sección 1.1 (i), a la pág. 2.

13. Las excepciones al cumplimiento del pago de renta mensual fueron establecidas por acuerdos entre las partes, como resultado de la pandemia. El primer acuerdo, fechado el 21 de octubre de 2020 y titulado "Waived and Deferred Payment of Rent", el cual no se considera una enmienda, alteración, revisión al Contrato de Arrendamiento, y provee un acomod[o] con respecto a la obligación de pago del canon de arrendamiento, y otros cargos adeudados, correspondientes al periodo del mes de marzo 2020 hasta mayo 2020. El segundo y último acuerdo, también fechado el 21 de octubre de 2020 y titulado "Amendment Adjusting Percentage Rent", provee un acomod[o] con respecto a la cantidad de pago del canon de arrendamiento, y otros cargos adeudados, correspondientes al periodo de 1ro de mayo de 2020 al 31 de diciembre de 2020. *Véase* Anejos 3 y 4 de la Demanda. *Véase* también el párrafo número 11 de la Demanda. No hubo enmienda adicional al contrato de arrendamiento. (Nota omitida.)

14. La Demandada Reconveniente incumplió con su obligación de pagar los cánones de arrendamiento pactados en el Contrato de Arrendamiento. Dicho incumplimiento activo el Artículo XVIII del Contrato de Arrendamiento, el cual dispone que, en caso de incumplimiento por parte del arrendatario, Plaza Carolina podrá cobrar las rentas dejadas de percibir, intereses, rentas futuras, y penalidad. *Véase* Anejo 1 de la Demanda, Sección 18, a la pág. 22 *et seq.*

15. La parte Demandada Reconveniente adeudaba a la parte demandante al momento de la radicación de la Demanda la suma de SEISCIENTOS CUATRO MIL TRECIENTOS SETENTA Y SIETE DOLARES CON VEINTIUN CENTAVOS ($604,377.21), por concepto de rentas con relación al arrendamiento del *Espacio Comercial Número VC14*. Véase el párrafo número 13 de la Demanda. *Véase* también Anejo 5 de la Demanda.

16. La parte demandante notificó a las partes codemandadas sobre la deuda y sobre su incumplimiento de contrato. A estos efectos, véase comunicaciones del 18 de mayo de 2022, copia de la cual se incluyó con la Demanda como Anejo 5. El monto de la deuda se detalló en el documento que acompaña la comunicación marcada como Anejo 5. *Véase* el párrafo número 14 de la Demanda y Contestación a la Demanda.

17. Que posteriormente, Plaza Carolina Mall notificó a la parte demandada que la cantidad adeudada totalizaba CUATROCIENTOS CINCUENTA MIL DOSCIENTOS TREINTA Y DOS DOLARES CON CUARENTA Y OCHO CENTAVOS ($457,232.48) ante la mitigación de perdidas llevada a cabo por Plaza Carolina luego del incumplimiento por la parte demandada. Véase Exhibit I, "Net Present Value" al 31 de agosto de 2025.

18. El Contrato de Arrendamiento expresamente dispone que en caso de impago, el inquilino será responsable por pagar los honorarios incurridos por Plaza Carolina Mall en tener que acudir a los tribunales en cobro de dinero. *Véase* Ajeno 1 a la Demanda, a la pág. 23. (Énfasis suprimido.)

Consignado el derecho aplicable, Plaza Carolina cimentó su análisis en que, mediante el acuerdo entre las partes, los apelantes se obligaron a evaluar el potencial de éxito de las operaciones antes de su otorgamiento, por lo cual, no pueden invocar las doctrinas *exceptio no adimpleti contractus* y *exceptio non rite adimpleti contractus* como justificación para incumplir con su deber de pagar lo adeudado. Argumentó que, el matrimonio Rodríguez Lockwood firmó una garantía personal comprometiéndose a responder -en su carácter personal- por las deudas del negocio, por lo cual, solicitó al foro primario dictar sentencia sumaria declarando con lugar la demanda y condenando a los apelantes al pago solidario de la cuantía reclamada.

Separadamente y en igual fecha, Plaza Carolina instó una *Moció[n] en solicitud de sentencia sumaria de reconvención enmendada.*[7] En ella, adujo que la causa de acción que expuso La Parrilla Argentina en su reconvención, sobre daños por incumplimiento de contrato, es más bien sobre un alegado dolo en el proceso de negociación del contrato, la cual expuso que está

---

[7] Junto a su petitorio, el Apelado incluyó un Anejo identificado como: *Email Exchange Between Plaza Carolina and Jorge Rodríguez.* El mismo contiene doce (12) correos electrónicos relacionados a la causa de epígrafe, fechados el 10 y 13 de septiembre de 2021; 25 de octubre de 2021; 1 y 2 de noviembre de 2021; y 14 de enero de 2022. Entrada Núm. 53 en SUMAC.

prescrita y, por tanto, que no procede dictar sentencia declaratoria. En cuanto al presunto enriquecimiento injusto que invocaron los apelantes, Plaza Carolina solicitó la desestimación de dicha causa sustentado en unos correos electrónicos de los apelantes a través de los cuales renunciaron gratuitamente al equipo y mejoras dejados en el restaurante al cesar operaciones.

En reacción, los apelantes se opusieron conjuntamente a ambos petitorios sumarios.[8] En lo pertinente al petitorio relacionado a la reconvención, argumentaron que, Plaza Carolina incumplió con los requisitos procesales de la Regla 36.3(b) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b), al no desglosar los hechos incontrovertidos ni la prueba admisible que apoya disponer sumariamente de la reconvención enmendada a su favor. Respondieron detalladamente a la otra moción dispositiva, en la cual expusieron que, Plaza Carolina actuó de mala fe al hacer representaciones falsas sobre las ventas y el tráfico de clientes, sin responder a las comunicaciones que La Parrilla Argentina envió a esos efectos, el 28 de septiembre de 2015.[9] Señalaron que, lo antes, fundamenta su causa de acción sobre incumplimiento contractual e impide la solución sumaria de este asunto.

Además, insistieron en que Plaza Carolina se enriqueció injustamente al adueñarse del equipo y de las mejoras que La Parrilla Argentina dejó en el local arrendado al cesar sus

---

[8] Junto a su escrito en oposición, los Apelantes incluyeron los siguientes documentos: Anejo A-Deposición del Sr. Jorge A. Rodríguez Lockwood el 3 de abril de 2024; Anejo B- Deposición del Sr. Jorge A. Rodríguez Lockwood el 4 de abril de 2024; Anejo C-Correo electrónico cursado por el Sr. Jorge Rodríguez Melani dirigido al Sr. Rafael Álvarez Rodríguez el 28 de septiembre de 2015; Anejo D-Deposición del Sr. Rafael Álvarez Rodríguez el 10 de junio de 2024; Anejo E-Copia de mensajes de texto dirigidos al Sr. Rafael Álvarez con fecha del 7, 14 y 21 de septiembre de 2015, 2 de junio de 2016 y 12 de noviembre de 2016; Anejo F- Contestación al primer pliego de interrogatorio y requerimiento de producción de documentos; Anejo G- Deposición del Sr. Anthony Clementi Barbosa el 25 de abril de 2024; Anejo H- Correos electrónicos cursados por el Sr. Jorge Rodríguez Lockwood dirigidos a la Sra. Cheidy Marie García López el 2 de noviembre de 2021 y 14 de enero de 2022; Anejo I- Deposición de la Sra. Cheidy Marie García López el 29 de abril de 2024.
[9] Para evidenciar lo antes, citó la Deposición de Jorge Rodríguez Lockwood, págs. 64-65, líneas 20-23 y 1-22 y el *Exhibit* 2 identificado como Anejo C. Entrada Núm. 63 en SUMAC.

operaciones, sin descontar su valor de la cuantía reclamada. Arguyeron que, su intención fue dejar el equipo y las mejoras para facilitar a Plaza Carolina el arriendo del local, cuyo valor habría de abonarse a cualquier posible deuda y así evitar una acción legal en su contra. Añadieron que, el contrato de garantía suscrito por el matrimonio Rodríguez Lockwood limitó su responsabilidad bajo el contrato a un (1) año de renta. Rechazaron la procedencia de costas y honorarios de abogado porque, a su entender, quien actuó temerariamente fue Plaza Carolina.

Por último, los apelantes identificaron las siguientes controversias de hechos que presuntamente impedían la disposición sumaria de este asunto:

1. Si AGI incumplió el Contrato de Arrendamiento;
   a. De contestar en la afirmativa, deberá determinar:
      i. La cuantía por concepto de renta básica y adicional adeudada a PCM hasta la expiración del Contrato de Arrendamiento.
      ii. Si, en virtud del contrato de garantía suscrito por los co-demandados Jorge Rodríguez Melani e Irma Lockwood Benet, éstos responden por la totalidad de cualquier suma adeudada por la parte Demandada o s[i] el Contrato de Garantía limita su responsabilidad al equivalente a un año de renta.
2. Si PCM mitigó sus daños seg[ú]n requiere nuestro ordenamiento jurídico.
   a. De haberlo hecho, determinar la cuantía que mitigó PCM, la cual debe ser descontada de cualquier cuantía adeudada, si alguna.
3. Si PCM le hizo representaciones falsas a AGI, que nunca se materializaron, con el propósito de inducirla a suscribir el Contrato de Arrendamiento en controversia.
   a. De contestar en la afirmativa, determinar si procede la nulidad del Contrato de Arrendamiento.
4. Si PCM incumplió el Contrato de Arrendamiento al hacerle representaciones falsas de ventas y tráfico a AGI.
   a. De contestar en la afirmativa, determinar los daños sufridos por los Demandados por dicho incumplimiento.
5. Si PCM se ha enriquecido injustamente.
   a. De contestar en la afirmativa, determinar la cuantía de dicho enriquecimiento injusto.
6. Si PCM actuó de mala fe al inducir a AGI a firmar un contrato basado en representaciones falsas.

Sometidas las mociones dispositivas, el foro primario dictó la *Sentencia Parcial* impugnada, mediante la cual, declaró ha lugar la *Moció[n] en solicitud de sentencia sumaria de reconvención enmendada [SUMAC 53],* producto de lo cual, desestimó sumariamente la reconvención enmendada. Consignó en su pronunciamiento que "[...] la moción dispositiva ha sido evaluada, tras la culminación del descubrimiento de prueba." Lo antes, a los efectos de distinguirla de la moción de desestimación que instó Plaza Carolina, el 17 de febrero de 2023, previamente denegada.

En atención a la *Moción en solicitud de sentencia sumaria,* el TPI emitió la *Resolución Enmendada* en la cual consignó como incontrovertidos los siguientes hechos:

1. La parte demandante, en su función de arrendador, le arrendó a la parte codemandada y arrendataria AGI un espacio comercial de 588 pies cuadrados aproximadamente, localizado en el Centro Comercial Plaza Carolina e identificado para efectos del Contrato de Arrendamiento entre las partes como el Espacio Comercial Número VC14.
2. El Contrato entre el demandante y AGI referente a dicho espacio fue suscrito el día 11 de mayo de 2015, por un periodo de diez (10) años.
3. El Contrato entre entre el demandante y AGI fue enmendado el 29 de mayo de 2019.
4. Como parte del Contrato de Arrendamiento, y en consideración de este, la parte demandada firmó una garantía personal en la cual comparecieron los codemandados Jorge Rodriguez Melani e Irma Lockwood Benet. A tenor con esta, los codemandados Sr. Rodríguez y la Sra. Lockwood como la sociedad legal de gananciales son deudores solidarios de la obligación contractual.
5. En el Contrato de Arrendamiento, la AGI se comprometió a pagar un canon de arrendamiento anual de $93,280.32 por el primer año del contrato, $96,079.20 por el segundo año del contrato, $98,960.40 por el tercer año del Contrato, $101,929.80 por el cuarto año del contrato, $104,987.40 por el quinto año del contrato, $108,139.08 por el sexto año del contrato, $111,384.84 por el séptimo año del contrato, $114,724.68 por el octavo año del contrato, $118,164.48 por el noveno año del contrato, y $121,710.12 por el décimo y último año del contrato, cantidad que debe ser pagada en cuotas mensuales de igual cantidad.
6. Las excepciones al cumplimiento del pago de renta mensual fueron establecidas por acuerdos entre las partes, como resultado de la pandemia. El primer acuerdo, fechado el 21 de octubre de 2020 y titulado "Waived and Deferred Payment of Rent", el cual no se considera una enmienda, alteración, revisión al Contrato de Arrendamiento, y provee un acomod[o] con respecto a la obligación de pago del canon de arrendamiento, y otros cargos adeudados, correspondientes al periodo del mes de marzo 2020 hasta mayo 2020. El segundo y último

acuerdo, también fechado el 21 de octubre de 2020 y titulado "Amendment Adjusting Percentage Rent", provee un acomod[o] con respecto a la cantidad de pago del canon de arrendamiento, y otros cargos adeudados, correspondientes al periodo de 1ro de mayo de 2020 al 31 de diciembre de 2020.

7. La Demandada incumplió con su obligación de pagar los cánones de arrendamiento pactados en el Contrato de Arrendamiento. Dicho incumplimiento activó el Artículo XVIII del Contrato de Arrendamiento, el cual dispone que, en caso de incumplimiento por parte del arrendatario, Plaza Carolina podrá cobrar las rentas dejadas de percibir, intereses, rentas futuras, y penalidad.

Sin embargo, el foro primario identificó que existe controversia en cuanto a la cantidad adeudada. Lo antes, en ausencia de una fecha cierta desde cuándo La Parrilla Argentina dejó de efectuar las mensualidades, a los fines de efectuar el cálculo correspondiente. En su consecuencia, declaró no ha lugar al petitorio sumario de los Apelados y ordenó la continuación de los procesos.

Inconforme, los apelantes acuden ante esta Curia de ambos dictámenes del foro primario. Mediante el recurso de apelación, cuestionan la *Sentencia Parcial* dictada y le imputan al foro primario lo siguiente:

ERRÓ EL TPI AL DESESTIMAR LA RECONVENCIÓN DE LPA, A PESAR DEL TPI YA HABER DECLARADO NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN DE PCM QUE FUE PRESENTADA BASANDOSE EN LOS MISMOS FUNDAMENTOS.

ERRÓ EL TPI AL NO RECHAZAR DE PLANO LA SOLICITUD DE SENTENCIA SUMARIA PRESENTADA POR PCM, PESE A QUE ESTA INCUMPLIÓ DE MANERA SUSTANCIAL CON LOS REQUISITOS ESTABLECIDOS EN LA REGLA 36.3 DE PROCEDIMIENTO CIVIL CON EL EFECTO DE PRIVAR A LPA DE SU DERECHO FUNDAMENTAL A TENER SU DÍA EN CORTE.

ERRÓ EL TPI AL IGNORAR, SIN ANÁLISIS NI FUNDAMENTO, LOS HECHOS ADICIONALES PROPUESTOS POR LPA EN SU OPOSICIÓN A LA SENTENCIA SUMARIA, LOS CUALES DEMUESTRAN LA EXISTENCIA DE CONTROVERSIAS DE HECHO QUE HACEN IMPROCEDENTE DICHA SOLICITUD.

ERRÓ EL TPI AL DESESTIMAR LAS CAUSAS DE ACCIÓN DE SENTENCIA DECLARATORIA E INCUMPLIMIENTO DE CONTRATO.

ERRÓ EL TPI AL DESESTIMAR LA CAUSA DE ACCIÓN POR ENRIQUECIMIENTO INJUSTO.

A través del recurso de *certiorari,* los apelantes cuestionan la *Resolución Enmendada* del TPI y allí consignan los siguientes señalamientos:

> ERRÓ EL TPI AL INCLUIR EN SU RESOLUCIÓN, Y LUEGO AL ELIMINAR EN SU RESOLUCIÓN ENMENDADA, LA DETERMINACIÓN DE HECHO #7, LA CUAL CONSTITUYE UNA CONCLUSIÓN DE DERECHO SOBRE UN INCUMPLIMIENTO CONTRACTUAL QUE ESTÁ EN DISPUTA Y QUE DEBE RESOLVERSE MEDIANTE JUICIO EN SU FONDO.

> ERRÓ EL TPI AL INCLUIR EN SU RESOLUCIÓN, Y LUEGO AL NO ENMENDAR EN SU RESOLUCIÓN ENMENDADA, LA DETERMINACIÓN DE HECHO #4 PARA QUE REFLEJARA LO QUE ESTABLECE EL CONTRATO DE ARRENDAMIENTO QUE ESTABLECE QUE LA RESPONSABILIDAD PERSONAL DE LOS CODEMANDADOS RECURRENTES RODRÍGUEZ Y LOCKWOOD ESTÁ LIMITADA AL EQUIVALENTE A UN (1) AÑO DE RENTA VIGENTE AL MOMENTO DE CUALQUIER ACTO DE INCUMPLIMIENTO.

En respuesta al recurso de apelación, Plaza Carolina insta un *Alegato en Oposición a Recurso de Apelación* en el cual discute que el TPI no estaba impedido de adjudicar el petitorio sumario una vez finalizó el descubrimiento de prueba y luego de haber denegado previamente la moción de desestimación. Señala que no existe un hecho material en controversia que impidiera al foro primario desestimar sumariamente la reconvención. Arguye que, las reclamaciones contractuales de los Apelantes están prescritas, o en su defecto, que no proceden debido a que el Apelado no garantizó a los Apelantes un volumen de ventas ni un tráfico de clientes. Por último, asegura que tampoco procede el reclamo de los Apelantes sobre enriquecimiento injusto, en virtud de las disposiciones de la Cláusula 10.2 del Contrato.

Separadamente, el Apelado se opone al auto de *certiorari,* mediante un *Memorando en Oposición a Expedición de Auto de Certiorari.* Allí argumenta que, no procede eliminar la determinación de hecho #7 debido a que la misma está sustentada en la prueba. Reitera que, cualquier reclamo sobre incumplimiento contractual que pudiese tener La Parrilla Argentina en su contra está prescrito.

Expone que, por virtud de la garantía personal, los esposos Rodríguez Lockwood son deudores solidarios de la obligación contractual.

Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. Sentencia Sumaria**

El mecanismo de sentencia sumaria está codificado en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros*, 2025 TSPR 78, resuelto el 5 de agosto de 2025. Cabe señalar que, esta herramienta permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe duda sobre los hechos esenciales y se cuenta con la evidencia necesaria, de manera que, solo resta aplicar el derecho. *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et als.*, 2025 TSPR 6, resuelto el 15 de enero de 2025. Este cauce sumario -invocable tanto por la parte reclamante como por quien se defiende de una reclamación- resulta beneficioso para el tribunal y para las partes, pues agiliza el proceso judicial mientras, simultáneamente, provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, resuelto el 14 de enero de 2025.

Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et als.*, supra. De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar

prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* 2025 TSPR 1, resuelto el 7 de enero de 2025.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Econo y otro,* 213 DPR 80 (2023). Es un hecho medular el que puede afectar el resultado de la reclamación, conforme al derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Cabe destacar que, la parte que desafía una moción de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *Íd.*; *León Torres v. Rivera Lebrón,* 204 DPR 20, 43 (2020). Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *León Torres v. Rivera Lebrón,* supra. A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe detallar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.*

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Además,

al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. En particular, nuestro más Alto Foro señaló que:

> [...] el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra. Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo y otros v. Depto Hacienda y otros,* 212 DPR 335, 352 (2023).

**III.**

La presente causa versa sobre un cobro de dinero que incoó el Apelado en contra de los Apelantes conforme un contrato de arrendamiento, producto de lo cual, estos últimos reconvinieron y, entre otros remedios, levantaron como defensa la doctrina de enriquecimiento injusto. Como se sabe, para que prospere la causa de acción sobre cobro de dinero, el Apelado deberá probar ser acreedor de una deuda vencida, líquida y exigible. *RMCA v. Mayol Bianchi,* 208 DPR 100 (2021). Mientras que, para ser elegible a invocar la defensa de enriquecimiento injusto, los Apelantes deberán establecer los siguientes criterios:

1. Existencia de un enriquecimiento.
2. Un empobrecimiento correlativo.
3. Una conexión entre el empobrecimiento y el enriquecimiento.
4. Falta de causa que justifique el enriquecimiento.
5. Inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa.[10]

Aclarado lo antes, puntualizamos que, en su recurso de apelación (Recurso Núm. TA2025AP00059), los Apelantes imputan al foro primario la comisión de cinco errores, todos dirigidos a

---

[10] *S.L.G. Sánchez v. S.L.G. Valentín,* 186 DPR 503, 516 (2012).

cuestionar la desestimación sumaria de su reconvención sobre sentencia declaratoria, incumplimiento de contrato y enriquecimiento injusto. Entre otros fundamentos, los Apelantes discuten que el foro primario no debió desestimar sumariamente la reconvención, en consideración a los hechos en controversia desglosados en su escrito en oposición y a que el petitorio sumario del Apelado incumplió con las formalidades de la Regla 36.3 de las Reglas de Procedimiento Civil, *supra.*

A los fines de dilucidar si el TPI actuó correctamente al desestimar sumariamente la reconvención debemos revisar *de novo* la *Moció[n] en solicitud de sentencia sumaria de reconvención enmendada* que instó el Apelado, junto a la oposición de los Apelantes y sus respectivos anejos, tal cual nos lo exige la normativa de *Meléndez González et al. v. M. Cuebas,* supra. En el ejercicio de tal encomienda, constatamos que el Apelado no observó los requisitos de forma que establece la Regla 36.3(a) de las Reglas de Procedimiento Civil, *supra.* Ahora bien, según la normativa de *Meléndez González et al. v. M. Cuebas*, supra, el mencionado incumplimiento no obligó al foro primario a rechazar de plano la *Moció[n] en solicitud de sentencia sumaria de reconvención enmendada.*

Superado lo anterior, constatamos que los Apelantes lograron establecer que existen controversias de hechos medulares que impedían al foro primario desestimar la reconvención, únicamente, en cuanto a la causal de enriquecimiento injusto. A esos fines, comenzaremos la discusión con el quinto señalamiento de error. Los restantes errores levantados los consolidaremos debido a su estrecha relación entre sí. Procedemos a continuación.

Según el Apelado, a tenor de la Cláusula 10.2 del Contrato, una vez los Apelantes abandonaron el local comercial, previo al vencimiento del acuerdo, Plaza Carolina Mall advino en posesión y

titularidad del equipo que los Apelantes allí dejaron. Para un mejor análisis de este asunto, citamos textualmente el contenido de la referida cláusula:

Section 10.2   Removal and Restoration by Tenant

All alterations, changes and additions and all improvements, including leasehold improvements, made by Tenant whether part of Tenant's Work or not, shall immediately upon installation attach to the fee and become Landlord's property and shall not be removed unless replaced by like property. If Tenant fails to remove any shelving, decorations, equipment, trade fixtures or personal property from the Premises prior to the end of the Lease Term, they shall become Landlord's property and Tenant shall repair or pay for the repair of any damage done to the Premises resulting from removing same but not for painting or redecorating the Premises.

Cabe reiterar que, el Apelado anejó a la *Moció[n] en solicitud de sentencia sumaria de reconvención enmendada* doce (12) correos electrónicos. Destacamos el mensaje que envió el Sr. Jorge Rodríguez Lockwood a Cheidy García, el 10 de septiembre de 2021, que lee:

Saludos Cheidy,

Lamentablemente ni aún con el ajuste de renta podemos seguir operando. La pandemia a exacerbado la situación en el food court y ya no es sostenible.

Proponemos poner la renta al día desde que se venció el acuerdo de renta y dejar todos los equipos "as is". $200k en equipos que solo tienen 5 años y se les facilitaría el arrendamiento del local.

 Quedo en espera de sus comentarios.

Jorge Rodríguez Lockwood

Asimismo, hacemos referencia a la respuesta de la Sra. Cheidy García, el 13 de septiembre de 2021, a saber:

Jorge

Estamos revisando los estados financieros enviados, en estos momentos no estamos dispuesto[s] en negociar una terminaci[ó]n temprana del contrato.

Saludos,

Cheidy Garc[í]a

Sin embargo, el argumento de los Apelantes fue que el Apelado se enriqueció injustamente al apropiarse del equipo que ellos dejaron en el local comercial objeto de arrendamiento. Según los Apelantes, su intención fue facilitar el posterior arrendamiento del inmueble, con la expectativa de que su valor se abone contra cualquier posible deuda. Sustentan su postura en tres correos electrónicos remitidos a representantes del Apelado, los cuales transcribimos a continuación.

El 28 de septiembre de 2015, el Dr. Jorge Rodríguez Melani comunicó al Sr. Rafael Álvarez lo siguiente:

Rafa:

Durante las últimas cuatro semanas te he estado enviando las ventas de nuestra tienda de Plaza Carolina comparada con la de Plaza Las Américas y no has tenido la decencia de siquiera emitir un comentario al respecto. Sé muy bien cu[á]l es la razón. El día 7 de septiembre aparte de enviarte las ventas te comenté que en el proceso de negociación siempre habíamos afirmado que sus comparaciones sobre las ventas en el food court de Plaza Carolina eran similares a las de Plaza Las Américas no eran reales y todos ustedes reafirmaron que la información era fidedigna, es decir digna de confianza. Utilizaron este argumento de forma irresponsable, deshonesta y poco profesional, con el solo propósito de convencernos de firmar el contrato, a sabiendas de que era falso, por lo que me siento timado y defraudado. Comparto las ventas de la última semana Plaza Las Américas $19,504.86 Plaza Carolina $7,794.95. Me salió muy caro confiar en ustedes.

Atentamente,
Dr. Jorge Rodríguez Melani

Anejaron, además, el correo electrónico que envió el Sr. Jorge Rodríguez Lockwood a la Sra. Cheidy García, el 2 de noviembre de 2021, citado a continuación:

La conversación siempre ha sido del alivio, pero al enviar toda la información que me solicitaron y no recibir respuesta presumimos que no se aprobaría otro. Ahí entonces es que hacemos la solicitud de terminación temprana.

Por último, el 14 de enero de 2022, el Sr. Jorge Rodríguez Lockwood remitió el siguiente correo electrónico a Cheidy García, con copia a Marilyn Suárez Fernández:

Saludos Cheidy,

Desde el 27 de diciembre se le informó a Marilyn Suarez que estaríamos cerrado ya que la mayoría del personal dio positivo a COVID y se encontraban en cuarentena. Como es de su conocimiento y hemos conversado en muchas ocasiones, la situación y pérdidas en Plaza Carolina se ha tornado insostenible y no podemos reanudar operaciones. Hemos estado en comunicación constante para llegar a un acuerdo pero lamentablemente el LL no ha estado dispuesto, aún estando en pleno conocimiento de la perdidosa operación desde el primer día. Hemos cumplido con toda la información solicitada en varias ocasiones evidenciando la grave situación económica que solo ha ido empeorando luego del huracán María y COVID.

Aclarando su pregunta sobre los fondos que nos otorgaron del Restaurant Revitalization Fund, estos se usaron en su totalidad para darle continuidad a la operación del restaurante incluyendo todos los pagos de renta que se han hecho y cumpliendo con todos los requisitos del mismo. Si no hubiésemos recibido ese dinero, se hubiese tenido que cerrar la operación mucho antes.

Estaremos poniendo la renta al corriente incluyendo el mes de diciembre, para esto deben cobrar la carta de crédito por $35,000 y la diferencia se entregó en un cheque de $7,575.43. También estaremos dejando más de $300k en equipos y mejoras en el restaurante para su beneficio en el arrendamiento del local.

Se removió del local todos los productos perecederos, se cerró la llave de paso de agua, gas y se dejó el breaker de luz apagado. [S]olo faltaría remover comida enlatada y papelería si ustedes lo permiten. La llave se dejó en la oficina del mall.

Atentamente,
Jorge Rodríguez Lockwood

En consideración a lo anterior, y tomando en cuenta que estamos ante una acción en cobro de dinero en la cual la parte demandada reconvino y controvirtió el cobro invocando la defensa de enriquecimiento injusto, resolvemos que no procede desestimar la reconvención en cuanto a la reclamación sobre enriquecimiento injusto. Resulta evidente que, estamos ante asuntos relacionados a la apreciación de la prueba que requieren adjudicar credibilidad, ponderar la intención contractual y evaluar la admisibilidad de la prueba. Por tanto, le corresponde al TPI celebrar la vista evidenciaría de rigor. Ello, a los fines de dilucidar: (1) cuál fue la intención de

ambas partes al remitir los correspondientes correos electrónicos; (2) el efecto de tales comunicaciones; (3) cuál es el valor del equipo y de las mejoras que dejaron los Apelantes en el local arrendado objeto de este litigio; (4) si dicho valor debe abonarse a favor de los Apelantes; y (5) la aplicabilidad de la Cláusula 10.2 del Contrato, tal cual la invoca el Apelado. Fundamentado en lo anterior, coincidimos con los Apelantes en que el foro primario incurrió en el quinto error señalado en el recurso de apelación.

Según adelantamos, los restantes errores imputados en el recurso de apelación los discutiremos conjuntamente. Como se sabe, nuestro ordenamiento jurídico permite a los litigantes presentar una moción de desestimación, al amparo de la Regla 10.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, en una etapa temprana del litigio, previo a instar una alegación responsiva. También viabiliza incoar un petitorio sumario bajo la Regla 36 de Procedimiento Civil, *supra,* una vez finalizado el descubrimiento de prueba. De manera que, y debido a que se tratan de dos mociones dispositivas independientes, no excluyentes, el foro primario no estaba imposibilitado a adjudicar un petitorio sumario luego de haber denegado una solicitud de desestimación.

Tal cual expusimos previamente, y a tenor de la jurisprudencia aplicable, tampoco el TPI estaba obligado a rechazar de plano la *Moció[n] en solicitud de sentencia sumaria de reconvención enmendada,* ante su incumplimiento con las formalidades de la citada Regla 36.3(a). En virtud de la Regla 42.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, y de lo resuelto por el Alto Foro en *Pérez Vargas v. Office Depot/Office Max, Inc.,* 203 DPR 687, 703 (2019), el foro primario está relevado de consignar sus determinaciones de hechos al disponer sumariamente de la controversia, sin que ello implique que, ignoró los hechos adicionales controvertidos que propusieron los Apelantes.

Con relación a las causas de acción sobre sentencia declaratoria e incumplimiento de contrato, desestimadas sumariamente, los Apelantes argumentan que el Apelado actuó mediante dolo y mala fe al presuntamente hacerles representaciones falsas sobre las proyecciones de ventas y el tráfico de clientes del centro comercial que no se ajustaron a la realidad. Indican que, tras remitir al Apelado varios correos electrónicos notificándolo de la presunta falta de representación, ello quedó establecido ante su silencio. Añaden que, debido a la mala fe imputada, procede decretar la nulidad del acuerdo. Aseguran que, tanto el Contrato como la enmienda otorgada el 29 de mayo de 2019, son contratos de adhesión que deben interpretarse a su favor.

Por su parte, el Apelado discute que las reclamaciones contractuales están prescritas. Afirma que no existen entre las partes otros acuerdos verbales o escritos, independientes al Contrato, del cual surge claramente que el Apelado no garantizó, prometió o representó a los Apelantes un potencial de éxito o un volumen de ventas particular.

A esos efectos, constatamos del expediente, en particular del Contrato otorgado entre las partes, que el Apelado no garantizó ni prometió a los Apelantes un volumen de ventas, determinado tráfico de clientes ni un potencial de éxito. Lo convenido a esos efectos fue:

> Section 24.3 Entire Agreement.
> There are no representations, covenants, warranties, promises, agreements, conditions or undertakings, oral or written, between Landlord and Tenant other than herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless in writing and signed by them. Tenant acknowledges that it has independently investigated the potential for the success of its operations in the Center and has not relied upon any inducements or representations on the part of Landlord or Landlord's representatives, other than those contained in the Lease. Tenant also acknowledges and agrees that, to the extent any projections, materials or discussions have related to Tenant's projected or likely sales volume, customer traffic or profitability, Tenant understands that any and all such projections, materials and discussions are based solely upon Landlord's experiences at other properties or upon standardized marketing studies, and **that such projections,**

**materials and discussions shall not be construed as a promise or guarantee that Tenant will realize the same or similar results.** (Énfasis nuestro.)

Mediante un buen ejercicio de hermenéutica colegimos que, en ausencia de ambigüedad, no procede revertir que lo convenido fue que los Apelantes debían realizar una investigación independiente del potencial de éxito de sus operaciones en Plaza Carolina Mall, sin que el Apelado les garantizara ganancias, tráfico o volumen particular. Tampoco surge del Contrato que el Apelado se comprometió con los Apelantes a mantener "anchor tenants" en el centro comercial a los fines de fomentar un tráfico sustancial de clientes y consumidores, tal cual alegan los Apelantes.

Conforme al principio de la autonomía contractual (*pacta sunt servanda*) que rige en nuestra jurisdicción,[11] los contratantes quedaron obligados a los términos pactados, en ausencia de error, dolo, violencia o intimidación que viciaran su voluntad contractual. Entiéndase que, no proceden los daños que reclamaron los Apelantes ni la sentencia declaratoria cuyo propósito era anular el Contrato por dolo. Tal cual expusimos previamente, no surge del Contrato que el Apelado prometió o garantizó a los Apelantes determinadas ganancias, ni un tráfico de clientes o un volumen de ventas particular, ni aseguró la existencia de "anchor tenants" en Plaza Carolina Mall. En su consecuencia, dictaminamos que los primeros cuatro errores señalados en el recurso de apelación no se cometieron.

Superado lo antes, corresponde evaluar la *Moción en solicitud de sentencia sumaria* cuestionada en el recurso de *certiorari* (Recurso Núm. TA2025CE00054). Observamos que, tanto el referido petitorio sumario del Apelado como el escrito en oposición de los Apelantes cumplen con las formalidades de las Reglas 36.3(a) y 36.3(b) de las Reglas de Procedimiento Civil, *supra.* Finalizado lo

---

[11] *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024).

anterior, procedemos a examinar si el foro primario incidió al emitir la *Resolución Enmendada* en la cual el TPI consignó siete (7) determinaciones de hechos y denegó adjudicar la causa sobre cobro de dinero por la vía sumaria.

Según discuten los Apelantes en su primer error, el foro primario debió eliminar la determinación de hecho #7 al emitir su dictamen denegando el petitorio sumario del Apelado porque el incumplimiento contractual que se le imputa está en controversia. A esos efectos, los Apelantes sostienen que, lo esbozado en la referida determinación de hecho constituye una conclusión de derecho. Para cumplir con el correspondiente análisis, nos referimos a la determinación de hecho #7 que consignó el foro primario en su dictamen, la cual lee:

> 7. La Demandada incumplió con su obligación de pagar los cánones de arrendamiento pactados en el Contrato de Arrendamiento. Dicho incumplimiento activó el Artículo XVIII del Contrato de Arrendamiento, el cual dispone que, en caso de incumplimiento por parte del arrendatario, Plaza Carolina podrá cobrar las rentas dejadas de percibir, intereses, rentas futuras y penalidad.

Coincidimos con los Apelantes en que, lo antes consignado, constituye una conclusión de derecho. Ello, en consideración a las controversias de hechos medulares desglosadas previamente, que guardan relación con el enriquecimiento injusto que invocaron los Apelantes, las cuales a su vez inciden sobre la acción en cobro de dinero del Apelado. Evaluados los planteamientos de las partes, así como, los expedientes consolidados de epígrafe, identificamos otros hechos medulares en controversia, a saber: (1) cuándo fue el último pago por concepto de canon de arrendamiento que efectuaron los Apelantes a favor del Apelado; (2) a cuánto asciende la deuda por dicho concepto; (3) en que consistió la entrega de equipos, su valor y la intención de las partes reflejadas en los correos electrónicos cursados; y (4) si lo antes activó la Cláusula XVIII del Contrato.[12]

---

[12] La Cláusula 18.1 del Contrato dispone lo siguiente ante el incumplimiento del arrendatario:

Sobre tales bases, resolvemos que el TPI incurrió en el primer error que le imputaron los Apelantes en el recurso de *certiorari.*

Los apelantes añaden como segundo error que, incidió el TPI al no incorporar en la cuarta determinación de hecho que la responsabilidad personal de los esposos Rodríguez Lockwood está limitada a un (1) año de renta. En su escrito en oposición, el Apelado reconoce que la garantía personal de los esposos Rodríguez Lockwood está limitada a doce (12) meses, y expresa que, la omisión de tal dato no requiere la expedición del auto de *certiorari.* A su entender, el referido término es relevante una vez establecida la cantidad adeudada y con el propósito de fijar la responsabilidad correspondiente a los esposos Rodríguez Lockwood.

---

Section 18.1. Right to Re-Enter.
The following shall be considered for all purposes to be defaults under and breaches of this Lease: (a) any failure of Tenant to pay any rent or other amount when due hereunder; (b) any failure by Tenant to perform or observe any other of the terms, provisions, conditions and covenants of this Lease for more than ten (10) days after written notice of such failure; (c) a determination by Landlord that Tenant has submitted any false report required to be furnished hereunder; (d) anything done by Tenant upon or in connection with the Premises or the construction of any part thereof which directly or indirectly interferes in any way with, or results in a work stoppage in connection with, construction of any part of the Center or any other tenant's space; (e) the bankruptcy or insolvency of Tenant or the filing by or against Tenant of a petition in bankruptcy or for reorganization or arrangement or for the appointment of a receiver or trustee of all or a portion of Tenant's property, or Tenant's assignment for the benefit of creditors; (0) if Tenant abandons or vacates or does not do business in the Premises; (g) this Lease or Tenant's interest herein or in the Premises or any improvements thereon or any property of Tenant are executed upon or attached; (h) the Premises come into the hands of any person other than expressly permitted under this Lease; or (i) any claim or lien is asserted or recorded against the interest of Landlord in the Premises or Center, or any portion thereof, on the account of, or extending from any improvement or work done by or at the instance, or for the benefit of Tenant, or any person claiming by, through or under Tenant or from any improvement or work the cost of which is the responsibility of Tenant.; or (j) the default by Tenant or any affiliate of Tenant under any other lease with Landlord or any affiliate of Landlord. In any such event, and without grace period, demand or notice (the same being hereby waived by Tenant), Landlord, in addition to all other rights or remedies it may have, shall have the right thereupon or at any time thereafter to terminate this Lease by giving notice to Tenant stating the date upon which such termination shall be effective, and shall have the right, either before or after any such termination, to re-enter and take possession of the Premises, remove all persons and property from the Premises, store such property at Tenant's expense, and sell such property if necessary to satisfy' any deficiency in payments by Tenant as required hereunder, all without notice or resort to legal process and without being deemed guilty of trespass or becoming liable for any loss or damage occasioned thereby. Nothing herein shall be construed to require Landlord to give any notice before exercising any of its rights and remedies provided for in Section 3.3 of this Lease. Notwithstanding anything to the contrary herein contained, if Tenant commits any default hereunder for or precedent to which or with respect to which notice is herein required, and commits such defaults within twelve (12) months thereafter, no notice shall thereafter be required to be given by Landlord as to or precedent to any such subsequent default during such twelve (12) month period (as Tenant hereby waives the same) before exercising any or all remedies available to Landlord.

Evaluado lo anterior, y por entender que la determinación de hecho #4, según redactada, no conlleva que los esposos Rodríguez Lockwood puedan responder en exceso de los doce (12) meses estipulados, dictaminamos que el segundo error no se cometió.

**IV.**

Por los fundamentos antes expuestos, revocamos en parte y confirmamos en parte la *Sentencia Parcial* objeto del Recurso Núm. TA2025AP00059. En particular, dejamos sin efecto la desestimación de la causa de acción sobre enriquecimiento injusto objeto de la reconvención. Además, expedimos el auto de *certiorari* y modificamos la *Resolución Enmendada* objeto del Recurso Núm. TA2025CE00054 a los fines de eliminar la determinación de hecho #7 y añadir controversias adicionales. Se devuelve este asunto ante el foro primario para la continuación de los procesos de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones